# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| SHARI DAWN CARTER, | ) 1:12CV2700 |
| | ) |
| Plaintiff | ) |
| | ) JUDGE JOHN R. ADAMS |
| v. | ) (Mag. Judge Kenneth S. McHargh) |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMIN., | ) |
| | ) |
| | ) |
| Defendant | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

McHARGH, MAG. JUDGE

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Shari Dawn Carter's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be VACATED and REMANDED.

## I.  PROCEDURAL HISTORY

On Sept. 25, 2008, Plaintiff Shari Dawn Carter ("Carter") applied for

Disability Insurance benefits and Supplemental Security Income.  (Doc. 12, Tr., at

14, 113-125.)  Carter alleged she became disabled on November 18, 2007, due to

depression, constant back, neck and shoulder pain, and complications from obesity,

including diabetes.  (Tr., at 19.)  Carter's applications were denied initially and

upon reconsideration.  (Tr.  14.)  On Sept. 23, 2009, Carter filed a written request

for a hearing before an administrative law judge.  (Tr., at 14, 102.)

An Administrative Law Judge ("the ALJ") convened a hearing on Dec. 14,

2010, in Cleveland to hear Carter's case.  (Tr., at 30-74.)  Carter was represented by

counsel at the hearing.  (Tr., at 33.)  Nancy J. Borgeson ("Borgeson"), a vocational

expert, and Donald W. Junglas ("Dr. Junglas"), a medical expert, attended the

hearing and provided testimony.  (Tr., at 32-33, 62-72.)

On Feb. 18, 2011, the ALJ issued his decision applying the standard five-step

sequential analysis[1] to determine whether Carter was disabled.  (Tr., at 14-24.)

---

[1]  Social Security Administration regulations require an ALJ to follow a five-step
sequential analysis in making a determination as to "disability."  See 20 C.F.R. §§
404.1520(a), 416.920(a); Heston v. Commissioner of Social Security, 245 F.3d 528,
534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in
> substantial gainful activity during the period of disability.  20 C.F.R. §
> 404.1520(a)(4)(i). Second, the claimant must show that he suffers from
> a severe medically determinable physical or mental impairment.  Id. §

Based on his review, the ALJ concluded Carter was not disabled.  Id.  Following the issuance of this ruling, Carter sought review of the ALJ's decision from the Appeals Council.  (Tr., at 110-111.)  However, the council denied Carter's request, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1.)  Carter now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  PERSONAL BACKGROUND INFORMATION

Carter was born on November 18, 1966, was 41 years old as of her alleged disability onset date, and 44 years old at the time of the hearing.  (Tr., at 22, 36.)  Carter's highest level of education was high-school equivalent (GED).  (Tr., at 38.)

---

404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir.1997).

Wilson  v. Commissioner of Social Security, 378 F.3d 541, 548 (6th Cir. 2004).

She has past experience working in several positions, primarily as a pharmacy technician, but also more recently in a pizza shop.  (Tr., at 20, 39-40.)

### III.  MEDICAL EVIDENCE[2]

Carter has been diagnosed with degenerative disc disease, and rotator cuff injury, among other physical ailments, along with depression.  See generally doc. 15, at 13.  The evidentiary record contains medical records from several medical providers.

In April 2008, Carter was admitted to Lake Hospital after attempting suicide by overdosing on Vicodin, which she had been taking for chronic back pain.  It was noted that she had back surgery 9 or 10 years previously, that she had depression and diabetes, and that she had previously attempted suicide with pills.  (Tr., at 214.)

Later that month, Carter presented at Pathways, Inc., for a diagnostic assessment.  Carter was diagnosed with Major Depressive Disorder, Recurrent, Severe Without Psychotic Features, and a Global Assessment of Functioning (GAF) score of 65.  (Tr., at 349.)  Her depression continued in May 2009 and worsened in June of 2009.  (Tr., at 451, 499.)

---

[2] The following is merely a summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching the recommendation.

4

In May 2008, Carter reported severe neck and right arm pain during a visit to University Hospitals Green Road medical center.  Her MRI showed an "extremely large extruded disk fragment," with some cord compression, and a smaller disk bulge on the other side, with congenital stenosis.  Also noted was "severe right cervical radiculopathy."  (Tr., at 282.)  Christopher Furey, M.D., recommended consideration of surgery, likely an anterior cervical discectomy and fusion.  (Tr., at 283.)

The day after, on May 28, 2008, Carter had a neurology consultation with Norton Winer, M.D., who agreed with Dr. Furey that Carter was a candidate for cervical discectomy and fusion because of the large disc fragment, but stated that she needed to stop smoking to ensure a successful surgery.  (Tr., at 284-286.)  In the meantime, she received several cervical nerve blocks.  (Tr., at 364-365.)

A diagnostic assessment on June 16, 2008, at Western Reserve Counseling Service, Inc., led to a diagnosis of Major Depressive Disorder, Single Episode, and secondarily, post traumatic stress disorder, and Bipolar I Disorder.  (Tr., at 249.)  She was assigned a GAF of 62.

In early 2009, Carter visited Teresa Ruch, M.D., with severe neck and shoulder pain.  Dr. Ruch performed a corpectomy with bone graft and a plate, on February 19, 2009, which resolved her arm pain, as reported during a post-surgical appointment the following month.  (Tr., at 430, 441.)

On April 23, 2009, Nancy Beller, M.D., completed a Work Ability Form which stated that Carter could not lift or carry anything during the workday, nor could

she bend or twist, squat or kneel.  She was limited to standing, walking, pushing, pulling, or reaching below the knee during five percent of the workday.  She could sit for forty percent of the workday.  Dr. Beller diagnosed cervical disc disease, seizures, cervical radiculopathy, with a history of narcotic dependence and opiate overdose.  Dr. Beller also noted that Carter experienced chronic neck and back pain. (Tr., at 456.)

Dr. Beller noted that Carter experienced difficulty in concentration, due to her medications.  Dr. Beller opined that it was "doubtful" that Carter would be able to sustain full-time employment because of her "poor coping skills."  Dr. Beller stated Carter would be "off-task" for four hours of an average eight hour workday. The prognosis regarding Carter's "condition and/or future ability to sustain employment" was stated to be "poor."  (Tr., at 457.)

Carter had an initial psychiatric evaluation with Robin Krause, R.N., on Dec. 9, 2009.  Carter complained of a history of mood swings.  (Tr., at 586.)  She was diagnosed with "bipolar disorder, mixed moderate, and posttraumatic stress disorder." (Tr., at 587.)  At a follow-up visit in January of 2010, Carter reported that the medications prescribed were helping her.  (Tr., at 588.)

Carter visited Thomas Svete, M.D., on March 8, 2010, for a second opinion. (Tr., at 581-583.)  Dr. Svete diagnosed her with "mood disorder not otherwise specified; posttraumatic stress disorder; pain disorder, combined type," and noted that she had opiate dependence in early remission.  (Tr., at 583.)

6

On March 12, 2010, Nurse Krause completed a Work Ability Form, which stated that Carter had bipolar disorder and depression.  (Tr., at 549.)  Krause said that Carter had poor concentration due to racing thoughts, and stated that Carter would be unable to sustain full-time employment because her mood was currently unstable.  (Tr., at 550.)  Krause stated that Carter would be "off-task" 50% of the time on an average workday.  Id.

On March 20, 2010, Dean C. Pahr, D.O, also completed a Work Ability Form, which stated that Carter could lift or carry up to ten pounds 50% of a workday, and 11-20 pounds 25% of a workday.  She was limited to bending 50% of the workday, and twisting, turning, pushing, pulling or reaching below the knee for 25% of the workday.  Carter was limited to standing, walking or sitting for 50% of the workday.  Carter was diagnosed with "fibromyalgia," cervical radiculitis, and post-laminectomy syndrome.  (Tr., at 546.)

Pahr stated Carter perceived that activity caused her pain.  He stated that Carter could concentrate less than 30 minutes at a time, and her pace was slow.  Pahr stated that it was "doubtful" that Carter would be able to sustain full time employment, and that she would be "off-task" for two to four hours of an eight hour workday, because of her pain and bipolar condition.  (Tr., at 547.)

William Benninger, Ph.D., completed a Mental Residual Functional Capacity Assessment concerning Carter on Dec. 15, 2008.  (Tr., at 382-399.)  Benninger noted that Carter's "day to day functioning is fair."  He found her statements on her symptoms and their effect on her functioning "partially credible."  Benninger found

7

that, although Carter has some limitations, "significant functional capacity remains." Carter is able to follow simple directions, and can maintain attention for simple routine tasks. Carter would do best in a setting without high production quotas, and with only superficial interaction with others. (Tr., at 384.)

Leslie Green, M.D., completed a Physical Residual Functional Capacity Assessment concerning Carter on Jan. 13, 2009. (Tr., at 401-408.) Dr. Green found that Carter could occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds. Carter could stand, walk or sit for about six hours of an eight hour workday. Carter was limited, in her upper extremities, in her ability to push or pull. Exams showed degenerative changes in Carter's right shoulder at the acromioclavicular joint; cervical spondylosis; and disc herniation. (Tr., at 402.) Dr. Green found that Carter's statements regarding her symptoms and their effect on her functioning were "partially credible." The exams performed did not support the severity of restrictions that Carter alleged. (Tr., at 406.)

Another Physical Residual Functional Capacity Assessment was completed by William Bolz, M.D., on July 24, 2009. (Tr., at 523-530.) Dr. Bolz also found that Carter could occasionally lift or carry 20 pounds, and frequently lift or carry 10 pounds. Carter could stand, walk or sit for about six hours of an eight hour workday. Carter was limited, in her upper extremities, in her ability to push or pull. (Tr., at 524.) Dr. Bolz noted that Carter had a corpectomy with bone graft and plate on Feb. 19, 2009. On May 21, 2009, Carter's motor strength was full, and she had adequate range of motion of the neck. (Tr., at 525.)

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law.  At step one of the five-step sequential analysis, the ALJ found Carter had not engaged in substantial gainful activity since her alleged onset date of Nov. 18, 2007.  (Tr., at 16.)  At step two, the ALJ ruled Carter suffered from the following severe impairments:  "depressive disorder, degenerative disc disease, rotator cuff injury, and obesity."  (Tr., at 16.)  But, at the next step, the ALJ determined that none of these physical impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr., at 17.)  The ALJ recognized that obesity may have an adverse impact on co-existing impairments, but noted that "no treating or examining medical source has specifically attributed additional or cumulative limitations to [Carter's] obesity." (Tr., at 17.)

The ALJ determined that Carter's mental impairment does not meet or medically equal the criteria of Listing 12.04, neither under paragraph B nor under paragraph C.  (Tr., at 17-18.)  The ALJ found that Carter has mild restrictions in activities of daily living, but she has retained significant functioning.  As to social functioning, the ALJ stated that Carter had moderate difficulties, mentioning her drug abuse, incarceration, and the loss of custody of her minor children as a result.

The ALJ next assessed Carter's residual functional capacity ("RFC").  He concluded that Carter retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

9

> . . . she can only occasionally push or pull; can never climb ladders, ropes, or scaffolds; can only occasionally use ramps or stairs; can never stoop, kneel, crouch, or crawl; must avoid all exposure to moving machinery, unprotected heights, and extreme cold; and must have a sit/stand option in which she can alternate positions at will.  The claimant may perform only simple, routine, repetitive tasks in a work environment free of fast-paced production requirements.  Work activity is further limited to tasks involving simple, work-related decisions, with only routine workplace changes, and must be isolated from the public with only occasional interaction with supervisors and coworkers.

(Tr., at 18-19.)

The ALJ stated that he considered all of Carter's symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence.  (Tr., at 19-22.) The ALJ conducted a two-step analysis:  First, he found that Carter's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (Tr., at 20.)

Second, the ALJ found that Carter's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible "to the extent they are inconsistent with the above residual functional capacity assessment."  (Tr., at 20.)  Regarding Carter's alleged depression, for example, the ALJ stated "the medical record is not consistent with the degree of the alleged symptoms for this period."  He pointed to evidence which supported a finding that her day to day functioning was fair, that she was working part-time, performed household tasks, and socialized with friends.  (Tr., at 20-21.)  The ALJ found that the level of

functioning indicated by the medical evidence was consistent with the RFC assessment above.

The ALJ also found that the medical evidence of record established that Carter "had significant musculoskeletal impairments, but she retained the capacity for functioning set forth above."  The record shows that Carter has experienced fluctuation in her weight during the relevant period, but despite her obesity, her diabetes was stable and well-controlled with medication.  (Tr., at 21.)

The ALJ obtained testimony from a medical expert, Dr. Junglas, to "clarify the record as to the severity" of Carter's physical and mental impairments, but the ALJ "assigned little weight to the expert's testimony with regard to [Carter's] mental impairments," finding it inconsistent with the record as a whole.  (Tr., at 21.)  The ALJ reasoned:

> The claimant was able to work part time, have a series of boyfriends, volunteer, and become more physically active since the onset date.  If anything, the medical record displayed improvement in the claimant's depressive symptoms throughout 2010, so Dr. Junglas' assertion that her condition had deteriorated is completely unsupported by the objective medical record.

(Tr., at 21.)

The ALJ also assigned "minimal weight" to the source statements from treating physicians Dr. Beller and Dr. Pahr.  As discussed earlier, Dr. Beller indicated Carter's prognosis was poor with regard to her ability to sustain future employment, and Dr. Pahr said it was doubtful that Carter would be able to sustain work, due to her impairments.  The ALJ assigned these treating opinions "minimal

11

weight as they are inconsistent with the medical evidence of record and the claimant's own assertions regarding her retained functioning."  (Tr., at 22.)

The state agency examiner's physical and mental evaluations[3] were assigned "significant weight, to the extent that they are consistent with the above functional assessment."  (Tr., at 22.)

The ALJ determined that Carter's credibility had been damaged by "inconsistent statements regarding her part-time job . . . and her history [of] legal trouble in 2009 when she was jailed for falsifying prescriptions."  The ALJ found Carter's "subjective complaints and alleged limitations are not fully persuasive and that [Carter] retains the ability despite her impairment to perform work activities with the limitations set forth above."  (Tr., at 22.)

The ALJ determined that Carter's ability to perform the full range of light work was impeded by her limitations.  To determine to what extent her limitations erode the unskilled light work occupational base, the ALJ asked the vocational expert, Borgeson, whether jobs exists in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  Borgeson testified that, given those factors, such an individual would be able to perform the requirements of representative occupations such as a mail clerk (non-postal) and charge account clerk.

---

[3] Provided by Dr. Benninger, Dr. Green, and Dr. David Demuth.

The ALJ concluded that, based on the testimony of the vocational expert, and considering Carter's age, education, work experience, and residual functional capacity, Carter "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  A finding of "not disabled" was found to be appropriate under the framework of the relevant rules.  The ALJ determined that Carter has not been under a disability, as defined in the Social Security Act, from Nov. 18, 2007, through the date of his decision.  The ALJ also stated that Carter's prescription dependence is not a material contributing factor to his determination.  (Tr., at 23.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## VI.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether

the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

## VII.  ANALYSIS

Carter challenges the ALJ's decision on the following basis:  "The ALJ erred in his evaluation of opinion evidence, including that of treating physicians."  (Doc.

14

15, at 11.) Carter points out that Dr. Beller found that Carter can only stand and walk for five percent of the workday, and sit for forty percent. Dr. Beller believed Carter would have difficulty sustaining employment due to poor coping skills, and would be off-task for half the workday. Carter cannot lift, carry, bend, kneel, squat, twist, or turn, and her medication interferes with her ability to concentrate. (Doc. 15, at 11, citing tr., at 456-457.) The court notes that Dr. Beller completed a Work Ability Form on April 23, 2009, and had been treating Carter since at least April 2008. (Tr., at 456-458.)

Carter also points to Dr. Pahr's opinion that Carter could perform exertional activities for only 25-50 percent of the workday, and that her concentration and pace are diminished. Dr. Pahr doubted Carter's ability to sustain employment, and said she would be off-task for two to four hours in an eight-hour workday. (Doc. 15, at 11, citing tr., at 546-547.) Dr. Pahr completed a Work Ability Form on March 2, 2010, and had been treating Carter since at least May 2009. (Tr., at 456, 495, 754.)

In addition, Carter notes that psychiatric nurse Krause noted Carter's poor concentration, and opined that she would be off-task fifty percent of the day because of mental symptoms. (Doc. 15, at 11, citing tr., at 550.)

Carter quotes the ALJ's decision dismissing the opinions of treating physicians Dr. Beller and Dr. Pahr: "The undersigned assigns these treating opinions minimal weight as they are inconsistent with the medical evidence of record and the claimant's own assertions regarding her retained functioning." (Doc. 15, at 11, citing tr., at 22.) Carter contends that the ALJ "rejected the content of

15

[the treating physicians'] opinions in a cursory manner based on his own independent judgment about what the record shows." (Doc. 15, at 12.)  Carter also complains that the ALJ did not mention nurse Krause's opinion at all.  (Doc. 15, at 11.)

### A.  Treating Physicians

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians. Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  Id.; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4]  The treating physician doctrine requires opinions from treating physicians to be given controlling weight where the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  Blakley, 581 F.3d at 406; Wilson, 378 F.3d at 544.

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying

---

[4] Effective March 26, 2012, Sections 404.1527 and 416.927 of the Code of Federal Regulations were amended.  Paragraph (d) of each section was redesignated as paragraph (c).  See 77 F.R. 10651-01, 2011 WL 7404303.

16

specific factors set forth in the governing regulations.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating physician's opinion.  Id. An ALJ's failure to adhere to this doctrine may necessitate remand.  Wilson, 378 F.3d at 545.

The Sixth Circuit has explained that the "good reasons" requirement serves a two-fold purpose.  First, "the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007) (quoting Wilson, 378 F.3d at 544) (internal quotations omitted).

Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." Rogers, 486 F.3d at 243.  Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight he assigned to the treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner."  Kalmbach v. Comm'r of Soc. Sec., No. 09-2076, 2011 WL 63602, at *8 (6th Cir. Jan. 7, 2011) (quoting Wilson, 378 F.3d at 543-46).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s).  Blakley, 581 F.3d at 406; Vance v. Commissioner of Social Security, No. 07-5793, 2008 WL

17

162942, at *3 (6th Cir. Jan. 15, 2008).  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  Blakley, 581 F.3d at 406-407; Winning v. Commissioner, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

The ALJ here, rather than giving controlling weight to the opinions from treating physicians, simply stated that he was assigning these opinions "minimal weight as they are inconsistent with the medical evidence of record and the claimant's own assertions regarding her retained functioning."  (Tr., at 22.)  While recognizing at one point that Carter had "three lumbar back surgeries and one neck surgery" (tr., at 19), and recognizing that Carter had overdosed on pain medication in 2008 ("she was taking it for pain, not to kill herself") (tr., at 20), the ALJ's focus is on Carter's credibility.

Although the ALJ addresses Carter's "alleged depression," and provides several reasons for finding that the intensity, persistence and limiting effects of her depression are not credible (tr., at 20), he does not discuss the treating physicians' diagnosis of the persistence of Carter's back and neck pain, the limitations which arise from that pain, and the limitations caused by her various prescribed medications for pain, diabetes, seizures, and depression.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if

18

doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." Friend v. Commissioner of Soc. Sec., No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr. 28, 2010).  For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered.  Barrett v. Astrue, Civ. No. 11-08-GWU, 2011 WL 6009645, at *6 (E.D. Ky. Dec. 1, 2011).

In April 2009, Dr. Beller diagnosed Carter with "chronic neck and back pain," for which she was prescribed medications which Dr. Beller indicated caused Carter's difficulties in concentration, and made it "doubtful" that Carter could sustain full-time employment.  (Tr., at 456-457.)  In March 2010, Dr. Pahr also found it "doubtful" that Carter would be able to sustain full-time work, because of pain, and her bipolar condition.  (Tr., at 547.)

The ALJ found that, despite "significant musculoskeletal impairments," Carter retained the capacity set forth in the ALJ's RFC.  In support, the ALJ notes a positive Sept. 2008 follow-up exam after Carter's surgery for cervical discectomy and fusion, as well as cervical nerve blocks.  (Tr., at 21.)  The implication is that Carter's physical ailments were cured.  Yet, the medical record shows that Carter underwent additional surgery as a result of severe neck and shoulder pain less than six months later.  (Tr., at 430.)

The Commissioner argues that the ALJ's opinion was properly supported, and "the ALJ was not obligated to provide further articulation."  (Doc. 16, at 15.) Several of the cases cited in support by the Commissioner do not concern the

relevant issue, that is, the weight given to a treating physician's opinion.  In Daniels v. Commissioner, for example, the court was addressing evidence concerning a challenge to the ALJ's determination of the claimant's credibility, which is accorded great weight, not the treating physician doctrine.  Daniels v. Commissioner of Social Sec., No. 04-5709, 2005 WL 2739084, at *3 (6th Cir. Oct. 24, 2005).  The issue in Walker v. Secretary of HHS concerned the presumption of continuing disability, which required the Secretary to produce evidence that the claimant's condition improved, and in the absence of same, the claimant will be deemed to be still disabled.  Walker v. Secretary of HHS, 884 F.2d 241, 244-245 (6th Cir. 1989).

In Black v. Apfel, the claimant's treating physician wrote a letter to the SSA urging that the claimant be granted disability benefits.  Although the ALJ's decision "discussed the medical evaluations contained in [the treating physician's] letter and noted relevant information from the doctor's treatment notes," he did not adopt the claimant's argument that the letter was an unequivocal statement from his treating physician.  The court noted that "an ALJ is not required to discuss every piece of evidence submitted."  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).  Unlike in this case, it is clear that the ALJ in Black provided more than a conclusory statement concerning the treating physician's opinion.

In Cotter v. Harris, the Third Circuit stated that an ALJ should "provide some explanation of why s/he has rejected probative evidence which would have suggested a contrary disposition."  Cotter v. Harris, 650 F.2d 481, 482 (3d Cir.

20

1981).  The court does not consider the ALJ's cursory statement here to be "some explanation."

The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Parks v. Social Sec. Admin., No. 09–6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting Rogers, 486 F.3d at 243).

The court finds that the ALJ failed to provide "good reasons" for the "minimal" weight assigned to the treating physicians' opinions.  The ALJ's cursory dismissal of the treating physicians' opinions (which he briefly characterizes as "the remaining opinion evidence") is not supported by discussion or citations to the medical evidence in the case record, nor is his cursory statement sufficiently specific to make clear the reasons for the minimal weight assigned to these treating physicians' opinions.

## B.  Harmless Error

There are instances where an ALJ's failure to comport with the treating source doctrine may be deemed harmless.  A violation of the rule might constitute "harmless error" where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural

safeguard of reasons—even though she has not complied with the terms of the regulation." Wilson, 378 F.3d at 547.  None of these exceptions apply here.  Neither the ALJ nor the Commissioner claim that Dr. Beller or Dr. Pahr's findings were patently deficient.  Certainly, the ALJ did not adopt findings consistent with the doctors' opinions.  Nor did the ALJ provide an adequate explanation of why he rejected Dr. Beller and Dr. Pahr's opinions.  As a result, remand is necessary in order for the ALJ to reassess these medical opinions and, if rejected, offer a proper basis for the weight assigned to them.

## C.  Nurse Krause

As pointed out by the Commissioner, nurse Krause is not considered an "acceptable medical source" to establish whether Carter has a medically determinable impairment.  (Doc. 16, at 10; see 20 C.F.R. §§ 404.1513(a); 416.913(a).)  However, a nurse-practitioner can provide evidence to show the severity of a claimant's impairments and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1); see e.g., Cruse v. Commissioner of Soc. Sec., 502 F.3d 531, 541 (6th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007).

In Frantz, the ALJ referred to some of the evidence from the nurse's treatment notes,

> . . . but did not discuss what weight he gave to her opinion on the severity of [claimant's] limitations and on the functional effect those limitations have on her overall ability to work.  He ignored evidence from [the nurse] that would support a finding of disability while

highlighting evidence favorable to the finding of nondisability.  This
was error.

Frantz, 509 F.3d at 1302.  Here, the ALJ highlighted evidence from Krause which
was favorable to a finding on nondisability (tr., at 20-21), without specifically
addressing Krause's March 12, 2010, Work Ability Form, which stated that Carter
had bipolar disorder and depression, and would be unable to sustain full-time
employment (tr., at 549-550).  See generally Tr., at 22.  The Tenth Circuit stated
that the ALJ must discuss "significantly probative evidence he rejects."  Frantz, 509
F.3d at 1302.  See also Gayheart v. Commissioner of Soc. Sec., 710 F.3d 365, 378
(6th Cir. 2013) (ALJ must consider all relevant evidence); Cruse, 502 F.3d at 541
(ALJ must provide some basis for rejecting opinion); Winning, 661 F.Supp.2d at 820
(ALJ should explain  weight given to other sources).

While not addressing nurse Krause's opinion as a whole, the ALJ addressed
what he apparently viewed as inconsistencies arising out of Krause's treatment
notes and her finding that Carter's depression would render her unemployable.  The
ALJ supplied reasons for discounting Krause's findings.  The ALJ found that the
medical record was not consistent with the degree of alleged depression for the
period in question, and examined Krause's treatment notes in the context of that
discussion.  (Tr., at 20-21.)  There is substantial evidence in the record to support
the ALJ's determination in this regard.

23

## VIII.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be VACATED and the case be REMANDED back to the administration.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 25, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); see also United States v. Walters, 638 F.2d 947 (6th Cir. 1981).